UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Veronica Lopez Lopez, | CASE NO. 3:26 CV 128 |
| Petitioner, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| Kristi Noem, Secretary of U.S. Department of Homeland Security, et al., | **Memorandum of Opinion and Order** |
| Respondents. | |

**INTRODUCTION**

This matter is before the Court upon Petitioner Veronica Lopez Lopez's Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief (Doc. 1). Petitioner seeks review of her detention by Immigration and Customs Enforcement during her removal proceedings. For the reasons that follow, the Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief is GRANTED.

**BACKGROUND**

Petitioner Veronica Lopez Lopez ("Petitioner") is a native of Mexico. She entered the United States without inspection in 1999 and has remained in the country thereafter. On November 30, 2025, Petitioner was detained by Respondents.[1] She has remained detained since that time.

---

[1] Respondents aver that on August 20, 2014, Petitioner was issued a Form I-862, Notice to Appear that charged her with inadmissibility pursuant to Section 212(a)(6)(A)(i) of the Immigration and

On December 2, 2025, Petitioner, through counsel, requested that she be issued bond. On December 9, 2025, the Cleveland Immigration Court ("Immigration Court") denied bond, citing lack of jurisdiction.

The Immigration Court's claimed lack of jurisdiction comes in the wake of a September 5, 2025 Board of Immigration Appeals ("BIA") decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which proclaimed—for the first time in immigration history—that any person who crossed the border unlawfully and is later taken into immigration detention, is no longer eligible for release on bond. Before that decision, the official position of the BIA was that immigration judges had discretion to grant persons release on bond if the person did not have a disqualifying criminal record and the judge was satisfied, after a hearing, that the person was not a danger to the community or a flight risk.

Related, on July 8, 2025, the Immigration Customs and Enforcement Agency ("ICE"), issued internal "interim guidance," which changed the agency's longstanding interpretation of which noncitizens are eligible for release on bond during removal proceedings. Before July 8, 2025, a noncitizen in Petitioner's position would have been subject to detainment pursuant to 8 U.S.C. § 1226, and eligible for release from custody during removal proceedings. After July 8, 2025,

---

Nationality Act, alleging that she had illegally entered the United States without being inspected or admitted by an immigration officer. On January 20, 2016, by Petitioner's motion, the case was administratively closed. On July 16, 2025, a motion was filed with the Cleveland Immigration Court to place the case back on the active court calendar. The motion was granted. Thereafter, Petitioner was detained by Respondents. In her reply, Petitioner does not dispute that these events occurred.

noncitizens in Petitioner's position are treated as detained pursuant to 8 U.S.C. § 1225, which requires near mandatory detention without affording any bond hearing.[2]

On January 19, 2026, Petitioner filed the instant petition for a writ of habeas corpus ("Petition") against Respondents, arguing that her continued detention by Respondents without any bond hearing violates both the Due Process Clause of the Fifth Amendment and the plain language of the Immigration and Nationality Act ("INA"). Respondents filed a Return of Writ, arguing several bases on which this Court should dismiss the Petition.

**DISCUSSION**

Petitioner seeks a writ of habeas corpus, arguing that the manner of her continued detention by Respondents violates both the Due Process Clause of the Fifth Amendment and the plain language of the INA. Respondents contend the Petition should be dismissed because: (1) 8 U.S.C. § 1252(g) and/or 8 U.S.C. § 1252(b)(9) strip this Court of subject matter jurisdiction; (2) Petitioner failed to exhaust her administrative remedies; or (3) Petitioner was properly detained under 8 U.S.C. § 1252, which mandates her detention and does not afford her a bond hearing.

**A. This Court Has Subject Matter Jurisdiction Over Petitioner's Claims**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the

---

[2] The Department of Homeland security retains authority to, in its discretion, exercise its parole authority to temporarily release persons detained "on a case-by-case basis for urgent humanitarian reasons or significant public benefit.". 8 U.S.C. § 1182(d)(5)(A).

3

federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."

While this generally includes challenges by noncitizens in immigration-related matters, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), Congress has statutorily limited the specific circumstances under which district courts may issue writs for noncitizens detained in such matters. The issue here is whether Congress has specifically limited the Court's jurisdiction to review this Petition. Respondents contend that two different statutes divest this Court of jurisdiction: 8 U.S.C. 1252(g) and 8 U.S.C. 1252(b)(9). Respondents are incorrect.

1. **8 U.S.C. § 1252(g)**

First, contrary to the Government's assertion, 8 U.S.C. § 1252(g) does not "categorically" divest this Court of jurisdiction to grant habeas relief in all immigration-related proceedings. Section 1252(g) provides that

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The plain language of Section 1252(g) "limits jurisdiction as it relates to claims arising from the commencement of removal proceedings, adjudication of such cases, or the execution of removal orders—even when jurisdiction would otherwise be proper under federal question jurisdiction, mandamus jurisdiction, or 'any other provision of law[,]'" including habeas relief. *Bartolon v. Bondi*, 2025 WL 3674604, at *3 (S.D. Ohio Dec. 18, 2025) (citing *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010)). However, the Supreme Court has "cautioned that § 1252(g) does not cover 'the universe of deportation claims,' but is much narrower[.]" *Puerto-Hernandez v. Lynch*,

4

2025 WL 3012033, at *3 (W.D. Mich. Oct. 28, 2025) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno*, 525 U.S. at 482 (emphasis omitted)). "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* at 482; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (reaffirming the "narrow" nature of § 1252(g), and holding that § 1252(g) did not bar an action challenging the rescission of Deferred Action for Childhood Arrivals (DACA), which was "not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order.").

Further, lower courts have overwhelmingly agreed that Section 1252(g) does not divest courts of subject matter jurisdiction over habeas challenges to the legality of a noncitizen's detention." *E.g.*, *Bartolon*, 2025 WL 3674604, at *5; *Puerto-Hernandez*, 2025 WL 3012033, at *4 (citing cases).

Here, Petitioner does not challenge the decision or action to commence proceedings against her nor the adjudication of the case against her. Petitioner also does not challenge the execution of a removal order, as one has not yet been entered against her. Rather, Petitioner challenges the constitutionality of her continued detention without a bond hearing. Accordingly, 8 U.S.C. § 1252(g) does not divest this Court of jurisdiction over Petitioner's claims.

### 2. 8 U.S.C. § 1252(b)(9)

Respondents alternatively contend that 8 U.S.C. § 1252(b)(9) divests this Court of jurisdiction over Petitioner's claims. Section 1252 governs "[j]udicial review of a final order of

removal[.]" While Section 1252(a)(2)(D) explicitly preserves the ability to petition for a writ of habeas corpus to raise a constitutional issue, Section 1252(a)(5) makes the court of appeals "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter[.]" *See also Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) ("The REAL ID Act clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals. *See* 119 Stat. 310, 8 U.S.C. § 1252(a)(5).").

To that end, Section 1252(b)(9) provides that

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Id.*

Here, Respondents push for an expansive interpretation of this statute that is unsupported by its plain language and contradicts Supreme Court precedent on this issue. The plain language of the statute only targets claims ("questions") that arise from a removal-related action or proceeding. The Supreme Court has rejected an "expansive interpretation of § 1252(b)(9)." *Jennings v. Rodriguez*, 583 U.S. 281, 292–94 (2018). Consequently, courts have found that claims that are too distinct or "wholly collateral" to a removal action or proceeding are not barred by Section 1252(b)(9). *See Khalil v. President, United States*, 164 F.4th 259, 274 (3d Cir. 2026) (citing *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (citing cases)).

6

Here, while the act of detaining a noncitizen during removal could be said to arise from the removal proceedings, it does not necessarily follow that all claims arising from that detention can be said to arise from a removal-related action or proceeding. *See Jennings*, 583 U.S. at 295 n.3 ("The question is not whether detention is an action taken to remove an alien but whether the legal questions in this case arise from such an action. And for the reasons explained above, those legal questions are too remote from the actions taken to fall within the scope of § 1252(b)(9).)"). Detention-based claims that are one or more steps removed from the government's efforts to remove a person do not fall under Section 1252(g). *See id.* at 293; *see also Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (recognizing that jurisdiction over detention-based claims is independent of jurisdiction over removal-based claims).

The plurality decision in *Jennings* supports this interpretation. "[T]he *Jennings* plurality would let district courts adjudicate some, but not all, habeas challenges arising from actions taken before entry of a final order of removal." *Khalil*, 164 F.4th at 278. Specifically, the plurality concluded that Section 1252(b)(9) did not strip jurisdiction over a challenge to INA provisions that allowed prolonged detention without a bond hearing, reasoning that the "'questions of law and fact' raised . . . were not linked closely enough to the government's efforts to remove them." *Khalil*, 164 F.4th at 277 (quoting *Jennings*, 583 U.S. at 293). However, the plurality "strongly suggested" that Section 1252(b)(9) "would strip jurisdiction over claims with closer connections, like 'challeng[es] [to] the decision to detain them in the first place or to seek removal,' challenges to 'any part of the

7

process by which . . . removability will be determined,' and requests to 'review . . . an order of removal.'" *Id.* at 277 (emphasis omitted) (quoting *Jennings*, 583 U.S. at 294).[3]

Further, several lower courts considering this issue have found Section 1252(b)(9) does not divest courts of subject matter jurisdiction over a noncitizen's detention-based habeas claims.[4] *E.g.*, *Bartolon*, 2025 WL 3674604, at *6 (citing cases); s*ee also Khalil*, 164 F.4th at 276–79.[5]

Here, Petitioner does not challenge the decision or the action to detain her. Nor is she challenging the basis upon which she is detained. Rather, she challenges the constitutionality of her continued detention without a bond hearing. Accordingly, Section 1252(b)(9) does not divest the Court of subject matter jurisdiction to consider this detention-based claim.

---

[3] Respondents cite the concurring opinion in *Jennings* for the proposition that Section 1252(b)(9) is triggered here because "detention is an 'action taken . . . to remove' an alien." *See Jennings*, 583 U.S. at 319 (Thomas, J., concurring). The plurality in *Jennings*, however, explicitly rejected this contention. 583 U.S. at 295 n.3 ("The concurrence contends that 'detention is an "action taken . . . to remove" an alien' and that therefore 'even the narrowest reading of "arising from" must cover' the claims raised by respondents. We do not follow this logic." (emphasis omitted)).

[4] This Court is aware of one court within this district that interpreted Section 1252(b)(9) as divesting it of jurisdiction over similar claims. *Amaya-Velis v. Raycraft*, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026). This Court respectfully disagrees with that conclusion. *Amaya-Velis* did not analyze *Jennings* or *Khalil*—two cases that this Court finds to be highly instructive in guiding its own conclusion. Nor did *Amaya-Velis* address the several other lower courts that have analyzed this issue and found—relying on *Jennings*—that Section 1252(b)(9) does not bar district courts' review of analogous detention-based claims. *E.g.*, *Bartolon*, 2025 WL 3674604, at *6 (citing cases).

[5] Respondents misleadingly cite *Khalil* as supporting their proposition that Section 1252(b)(9) divests district courts of subject matter jurisdiction over habeas claims arising from actions to remove noncitizens, including alleged illegal detention claims. (Doc. 3, at 15.) An actual review of *Khalil*, however, illustrates that this Court actually retains jurisdiction over detention-based claims like Petitioner's. Although the Third Circuit found that Khalil could not rest jurisdiction on his detention claim, the court spent considerable time addressing *Jennings* and alluding to the type of detention claim that would fall outside Section 1252(b)(9)'s purview.

For all the aforementioned reasons, this Court has subject matter jurisdiction over Petitioner's claims.

### B. Petitioner Was Not Required To Exhaust Her Administrative Remedies

Before reaching the merits of the Petition, this Court must address whether the Petition should be dismissed, as Respondents contend, because Petitioner did not exhaust available administrative remedies.

Where, as here, no applicable statute or rule mandates administrative exhaustion, the decision whether to require exhaustion is within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), and such a court-made exhaustion rule must comply with statutory schemes and congressional intent. *Shearson*, 725 F.3d at 593–94.

Notably, the Sixth Circuit has not yet decided whether courts should impose prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. *See Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). Without guidance, the courts in this circuit have largely applied Ninth Circuit precedent but have reached conflicting results. *Compare Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (N.D. Ohio 2025) ("Here, all three [Ninth Circuit] factors weigh against requiring exhaustion."), *with Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 531 (N.D. Ohio 2025) (dismissing petition for failing to exhaust available administrative remedies).

Under the relevant Ninth Circuit precedent, courts may require prudential exhaustion when:

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 797 F. Supp. 3d at 778 (citing *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969))).

Applying these factors, this Court finds that all three weigh against requiring exhaustion. In so finding, this Court joins several other in this circuit that have reached the same conclusion in analogous cases. *E.g.*, *Echavvarria Morales v. Noem*, 2026 WL 100583, at *3 (N.D. Ohio Jan. 14, 2026); *Lopez-Campos*, 797 F. Supp. 3d at 778; *Puerto-Hernandez*, 2025 WL 3012033, at *7.

First, the issue raised in the Petition is purely legal in nature and does not require the agency to develop the record. The Petition requires the Court to interpret two statutes (Section 1226(a) and Section 1225(b)(2)(A)) to determine which applies to Petitioner. Matters of statutory interpretation belong historically within the province of the courts. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, there is nothing in the record that suggests that relaxing the exhaustion requirement here would encourage the deliberate bypass of the administrative scheme. Petitioner raises a constitutional challenge to her continued detention without a bond hearing. The Sixth Circuit has previously signaled that such challenges are beyond administrative review. *See Sterkaj v. Gonzales*,

10

439 F.3d 273, 279 (6th Cir. 2006) ("[A]n alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges)[.]"); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.").

Third, administrative review is not likely to change Respondents' view that Section 1225(b)(2)(A) applies to Petitioner. BIA (the reviewing agency), in conjunction with the Department of Justice, has made clear its interpretation mandating detention of noncitizens like Petitioner during removal proceedings. *Puerto-Hernandez*, 2025 WL 3012033, at *7 ("It is simply implausible that the BIA would change its position, regardless of the arguments set forth in this particular case, thus precluding meaningful review." (citing *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025)).

Further, even if this Court were to find that prudential concerns warranted exhaustion, it could still choose to waive exhaustion when the "legal question is fit for resolution and delay means hardship, or when exhaustion would prove futile." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation and internal quotation marks omitted); *see also Shearson*, 725 F.3d at 594 ("[T]here are some exceptions to the exhaustion doctrine. For example, exhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" (citation omitted)).

Here, as discussed above, the legal question is fit for exhaustion and the pursuit of administrative remedies would almost certainly be a futile gesture. The Petition is just one—of what the Court can only estimate are thousands—of petitions seeking analogous relief because of

BIA's and ICE's recent interpretative shift. Immigration courts across the country are denying bond hearings for noncitizens like Petitioner, claiming the courts lack jurisdiction under recent BIA guidance. This Court cannot think of anything more clearly amounting to a "futile gesture" than requiring Petitioner to spend time appealing the Immigration Court's decision to deny her a bond hearing to the very agency that passed down that unequivocal directive. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025) (holding that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A)). *See also Contreras-Lomeli v. Raycraft*, 2025 WL 2976739, at *4 (E.D. Mich. Oct. 21, 2025) ("Waiver based on futility is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." (quoting *Cooper v. Zych*, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009))); *Barco Mercado v. Francis*, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025) ("To force [Petitioner] to request a bond hearing from an immigration judge—which would be denied under the BIA's recent decision and, even if it were held, would result in release being denied under that decision—and then appeal that denial to the same BIA that has prevented immigration judges from hearing bond requests in the first place, all before allowing [Petitioner] to seek judicial review [of his detention]. . . would be 'Kafkaesque.'").

Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required here.

### C. Petitioner Is Not Subject to Detention Under 8 U.S.C. § 1225(b)(2)

Finally, turning to the merits of the Petition, this case concerns the applicability of the detention provisions at 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2). Respondents insist that

Petitioner is subject to mandatory detention under Section 1225(b)(2), while Petitioner contends her detention is subject to Section 1226(a), which allows for discretionary release on bond.

This Court is hardly the first to address this issue. *See Barco Mercado*, 2025 WL 3295903, at *13 (listing 350 decisions that found for the habeas petitioner as of the date of that opinion). Notably, however, neither the Sixth Circuit nor the Supreme Court have directly reached whether Section 1226(a) or 1225(b)(2) applies to noncitizens like Petitioner, who entered the United States undetected and have remained present here for several years.[6] Absent any such controlling precedent, this Court joins the clear majority of courts across the county in finding that Section 1226(a) applies to Petitioner—not Section 1225(b)(2).

First and foremost, Respondents' interpretation stands in contrast to 8 U.S.C. § 1225's plain text. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). Section 1225(a)(1) defines an "applicant for admission" to the United States as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." Section 1225(b)(2)(A) then provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this

---

[6] This Court is aware of only two circuit courts that have reached this issue. *Compare Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (preliminary ruling) (finding that analogous plaintiffs likely had the "better argument"—that section 1226(a) applies—"[b]ased upon the text and structure of the two provisions"), *with Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (holding analogous petitioners were subject to detention under Section 1225(b)(2)). *But see Buenrostro-Mendez*, 2026 WL 323330, at *10 (Douglas, J., dissenting).

13

title." In other words, to trigger mandatory detention under Section 1225(b)(2)(A), three things must be true: the alien must be: (1) "an applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *Kashranov v. Jamison*, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025).

Here, Respondents insist that all "applicants for admission" are also "seeking admission" for purposes of mandatory detention under Section 1225(b)(2). This interpretation, however, renders the term "seeking admission" entirely superfluous of "applicant for admission," circumventing the cardinal principle of statutory construction that instructs courts to give effect, if possible, to every clause and word of a statute. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *see also Sumba v. Crowley*, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)).

Further, "applicant for admission" is a term of art, specifically defined by Congress— "seeking admission" is not. Respondents' attempt to equate a defined term of art with the everyday meaning of "seeking admission" because the terms share a word misses the mark. *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." (quotations and citation omitted)); *see also Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting) ("Congress may . . . define a word or phrase [like 'admission'] in a specialized way" but "absent such [a definition], those whose lives are governed by law are entitled

to rely on its ordinary meaning, not left to speculate about hidden messages." (citing *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025))).

"Seeking" "implies action[.]" *Lopez-Campos*, 2025 WL 2496379, at *6. "Seeking" requires something more than just passively being present in the United States. *See Francisco T. v. Bondi*, 2025 WL 3490809, at *5 (D. Minn. Sept. 5, 2025) ("[I]n general, a present participle is used to signal present and continuing action." (quoting *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022))). As such, Respondents' interpretation also fails to give effect to Congress' choice to use the active term "seeking" in describing those immigrants covered by Section 1225(b)(2). *See Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach.").

Unable to square their interpretation with the actual words as written, Respondents contend that if an alien is present in the United States but not legally admitted, then they must be "seeking admission" because to hold otherwise would lead to "a legal conundrum." (Doc. 3, at 24.) But this Court is guided by the plain text of the statute—not preferred outcomes.

Respondents' only textual support comes from Section 1225(a)(3)'s instruction that "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers" as some evidence that "applicants for admission" are a subset of noncitizens "seeking admission." While a simplistic reading of this single adjacent subsection lends some credence to Respondents'

15

position,[7] it is not enough to overcome the plain language and (as is to be discussed), the whole of the statutory structure, context, and history.[8]

Respondents' interpretation would also render Section 1226(a)'s recent amendment (the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025)), superfluous. *Chavez v. Dir. of Detroit Field Office*, 2025 WL 3187080, at *7 (N.D. Ohio Nov. 14, 2025) ("If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act. Further, if, as the government argues, § 1225(b)(2) mandates detention of all unadmitted immigrants, then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act.").

In response, Respondents offer only that "redundancies are common in statutory drafting" and "[t]he statutory language of 8 U.S.C. § 1226(c)—including the most recent amendment pursuant to the Laken Riley Act, see 8 U.S.C. § 1226(c)(1)(E), merely reflects a 'congressional effort to be doubly sure' that certain aliens are detained." (Doc. 3, at 30 citing *Barton v. Barr*, 590

---

[7] A more thorough analysis of the grammatical structure of this subsection casts doubt on Respondents' simplistic interpretation. *See Buenrostro-Mendez*, 2026 WL 323330, at *17 (Douglas, J., dissenting).

[8] To be sure, a different adjacent subsection with similar language actually lends support to Petitioner's interpretation. Section 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." By including the later term "seeking admission," Section 1225(a)(5), like Section 1225(b)(2)(A), specifies that it is about applicants for admission who are seeking admission. If Congress understood all applicants for admission to be seeking admission, it need not have included such a qualifier in different subsections of the chapter. *See Biden v. Texas*, 597 U.S. 785, 798 (2022) ("If Congress had wanted the provision to have th[e] effect [urged by the government], it could have said so in words far simpler than those that it wrote.").

16

U.S. 222, 239 (2020).) But where Respondents' interpretation requires the Court to overlook redundancies that make a recent amendment superfluous, Petitioner's interpretation plainly gives effect to each provision. "[As]the Supreme Court reminds us, if an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (preliminary ruling) (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)); *see also Henderson v. United States*, 568 U.S. 266, 281 (2013) (Scalia, J., dissenting) ("A rudimentary principle of textual interpretation—so commonsensical that it scarcely needs citation—is that if one interpretation of an ambiguous provision causes it to serve a purpose consistent with the entire text, and the other interpretation renders it pointless, the former prevails.").

If the plain text of the statute and its structure were not enough, Respondents' interpretation also ignores the Supreme Court's pronouncement in *Jennings*. In *Jennings*, the Supreme Court analyzed both Section 1226 and 1225(b), noting that Section 1225(b) "applies primarily to aliens seeking entry into the United States" and that Section 1226 "applies to aliens already present in the United States." 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).").[9]

---

[9] Respondents contend that "[i]n analyzing 8 U.S.C. § 1225(b)(2)(A), the Supreme Court in *Jennings* equated 'applicants for admission' with aliens 'seeking admission.'" (Doc. 3, at 26–27.)

17

Lastly, Respondents' interpretation "disregards more than half a century of precedent enshrining into law the heightened protections applicable to noncitizens already living within our borders." *Rivero v. Mina*, 2026 WL 199319, at *3 (M.D. Fla. Jan. 26, 2026) (citing *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.")); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (explaining how the legislative history behind Section 1226 indicates that the statute applies to noncitizens that "reside in the United States but previously entered without inspection").

In the end, Respondents' interpretation seems best understood as a disagreement with certain bedrock principles of immigration law. Relying on the BIA's recent decision in *In re Yajure Hurtado*, 29 I.&N. Dec. 216, 225 (BIA 2025), Respondents contend that "aliens 'who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. . . . To hold otherwise would lead to an "incongruous result" that rewards aliens who unlawfully enter the United States without inspection and subsequently evade apprehension for number of years.'" (Doc. 3, at 24 (citations omitted).) Respondents may very well find that the immigration statutes, as they stand, lead to results that are

---

"This passage is taken from a discussion of § 1225(b), with no relevance to the core distinction between § 1225 and § 1226, and suggests only that noncitizens seeking admission are applicants for admission—the reverse of what the government needs to demonstrate." *Buenrostro-Mendez*, 2026 WL 323330, at *14 n.7 (Douglas, J., dissenting) (citing *Jennings*, 583 U.S. at 297).

18

incompatible with Respondents' desired outcome.[10] Unfortunately for Respondents, this Court is bound to apply the statutes as they are written—not as Respondents wish they were written. *Loper Bright Enters.*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."). The proper mechanism for Respondents to align these statutes with their objectives is through Congress—not through unilateral administrative interpretations of the laws.

Accordingly, for all the aforementioned reasons, this Court joins the clear majority of courts across the country that have refused to read words out of the statute, ignore superfluous language, downplay Supreme Court dicta, and disregard long-standing principles of immigration law, just to align the statutes with Respondents' policy preferences. Petitioner is subject to detention under 8 U.S.C. § 1226(a)—not 8 U.S.C. § 1225(b). As such, Petitioner's continued detention without a bond hearing is unlawful and she is entitled to habeas relief.

---

[10] While Respondents seem to view the unequal treatment between noncitizens inspected at the border and noncitizens who have already effected an unauthorized entry as "incongruous," this distinction has support in the historical application of immigration law: "(1) bond has always been available to detained noncitizens already present in the United States; (2) as this practice exemplifies, government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen; and (3) with only a little imagination, the government's and the majority's reading means that anyone present in this country at any time must carry the precise kinds of identification they would otherwise have only carried to the border for international travel, lest they be mistaken for an inadmissible noncitizen 'seeking admission' into the country." *Buenrostro-Mendez*, 2026 WL 323330, at *18 (Douglas, J., dissenting).

**CONCLUSION**

For all the aforementioned reasons, the Veronica Lopez Lopez's Petition for Writ of Habeas Corpus and Complaint for Emergency Injunctive Relief is GRANTED. Within five days of this Memorandum of Opinion and Order, Respondents shall either afford Petitioner the statutory process required under Section 1226(a), which includes a bond hearing, or release her from custody.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

**Date: 2/12/26**